```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MARY ANN HOLSTON,<br>also known as<br>MARY ANN HOLDEN,<br><br>        Plaintiff,<br><br>    v.<br><br>PENNSYLVANIA HIGHER EDUCATION<br>ASSISTANCE AGENCY,<br>doing business as<br>FEDLOAN SERVICING,<br><br>        Defendant. | 1:19-cv-01211-NLH-AMD<br><br>**OPINION** |

**APPEARANCES**:

MARY ANN HOLSTON
1 GATESWOOD COURT
BORDENTOWN, NJ 08505

    *Plaintiff appearing pro se*

JOHN CHRISTOPHER GRUGAN
ELEANOR BRADLEY HUYETT
BALLARD SPAHR ANDREWS & INGERSOLL LLP
1735 MARKET STREET
51ST FLOOR
PHILADELPHIA, PA 19103

    *On behalf of Defendant*

**HILLMAN, District Judge**

    This matter concerns tort and consumer fraud claims by Plaintiff arising out of the Public Service Loan Forgiveness Program ("PSLF Program"). Presently before the Court is the motion of Defendant, Pennsylvania Higher Education Assistance

Agency ("PHEAA"), which services the PSLF Program, to dismiss Plaintiff's claims against it. For the reasons expressed below, Defendant's motion will be granted. Plaintiff will be afforded twenty days to file an amended complaint.

## BACKGROUND

Although not expressly delineated in numbered counts per se, Plaintiff Mary Ann Holston asserts three claims, one statutory and two common law torts. Starting with the last claim first, the third claim (Docket No. 1-1, Complaint, para 46-51) asserts that in its administration of the PSLF Program, PHEAA has violated the New Jersey Consumer Fraud Act ("NJCFA") N.J.S.A. 56:8-1, et. seq. The Complaint also claims "tortious interference with expectancy," (Docket No. 1-1, Complaint, para 27-38) and negligent misrepresentation (Id. at para 39-45).

Under the PSLF Program, 20 U.S.C. § 1087e(m), which was enacted on October 1, 2007, the U.S. Department of Education may forgive the remaining balance of William D. Ford Federal Direct Loans ("Direct Loans") after a borrower satisfies several requirements, including that the borrower must make 120 qualifying monthly payments under a qualifying repayment plan while working full-time for a qualifying employer, such as government and not-for-profit organizations.

On February 28, 2018, in the Consolidated Appropriations Act, 2018, Congress provided limited, additional conditions

2

under which a borrower may become eligible for loan forgiveness under the PSLF Program if some or all of the payments were under a nonqualifying repayment plan. The U.S. Department of Education has referred to this as the Temporary Expanded Public Service Loan Forgiveness ("TEPSLF") opportunity.

Plaintiff claims that she has a qualifying Direct Loan in the original amount of $62,000 on which she began repayment in 2001. On February 11, 2008, Plaintiff began working for the City of New York, which is a qualifying employer, and as of February 11, 2018, Plaintiff had completed 120 payments. In 2013, Plaintiff had transferred her loans to PHEAA, which Plaintiff claims was required in order to become eligible for the PSLF Program.[1]

---

[1] By way of background:

> [The U.S. Department of] Education administers federal student aid programs, including the William D. Ford Federal Direct Loan (Direct Loan) program, through the Office of Federal Student Aid. Only Direct Loans are eligible for the TEPSLF and PSLF programs. Under the Direct Loan program, Education issues and oversees federal loans provided to students and contractors service these loans. Education currently contracts with nine loan servicers that each handle the billing and other services for a portion of the over $1 trillion in outstanding student loans provided through the Direct Loan program. These servicers track and manage day-to-day servicing activities. Education contracts with a single loan servicer to implement PSLF and TEPSLF, which includes responding to borrower inquiries, reviewing requests for loan forgiveness, and processing loan forgiveness for qualifying borrowers. Borrowers interested in pursuing loan forgiveness under either PSLF or TEPSLF must have their loans transferred to this loan

3

Plaintiff claims that she filed the application for loan forgiveness under the PSLF Program, but she was denied on June 23, 2018. Plaintiff claims that she subsequently applied for TEPSLF, but that application was denied on November 11, 2018.

Plaintiff claims that she relied on PHEAA to provide her with truthful and accurate information about her loan repayment option, but "PHEAA did not provide proper information about what repayment plan Plaintiff should be in to qualify for the PSLF or TEPSLF." (Docket No. 1-1 at 6.) For her 10 years of payments, Plaintiff was in the graduated repayment plan, rather than an income-driven repayment plan required by the PSLF Program and TEPSLF.[2] Plaintiff's PSLF and TEPSLF applications were denied on this basis. Because PHEAA intentionally, negligently, and

---

> servicer in order to proceed. . . . The Pennsylvania Higher Education Assistance Agency's FedLoan Servicing unit is the exclusive servicer for borrowers pursuing TEPSLF and PSLF.

GAO-19-595 Public Service Loan Forgiveness, at 4-5, available at https://www.gao.gov/assets/710/701157.pdf. Plaintiff alleges in her complaint that she had believed FedLoan Servicing was a governmental agency, rather than a private for-profit business under contract with the U.S. Department of Education.

[2] The PSLF Program requires a borrower to have made 120 qualifying payments under an income-driven plan. TEPSLF requires that for the previous twelve months prior to applying for TEPSLF, a borrower's payments must be at least as much as she would have paid under an income-driven plan. See https://studentaid.ed.gov/sa/repay-loans/forgiveness-cancellation/public-service/temporary-expanded-public-service-loan-forgiveness.

fraudulently "gave inaccurate and misleading information about the repayment plans and eligibility for PSLF" (Id. at 9) over the course of five years, Plaintiff claims that she has suffered damages in the amount of the balance of the principal and interest that should have been forgiven under PSLF and TEPSLF had she been in the appropriate qualifying repayment plan.

PHEAA has moved to dismiss Plaintiff's claims, arguing that Section 1098g of the Higher Education Act ("HEA") expressly preempts Plaintiff's claims, or otherwise bars them under a theory of conflict preemption, and there is no private cause of action under HEA. PHEAA also contends that Plaintiff's ultimate recourse is a claim against the U.S. Department of Education pursuant to the Administrative Procedures Act, 5 U.S.C. § 702. PHEAA further argues that Plaintiff's claims are insufficiently pleaded and fail to state any cognizable claims. Plaintiff has opposed PHEAA's motion, mainly arguing that the HEA does not preempt her consumer protection-based state law claims. Plaintiff also argues that her claims are sufficiently pleaded.

## DISCUSSION

**A. Subject matter jurisdiction**

PHEAA removed this action from the Superior Court of New Jersey, Chancery Division, Burlington County to this Court pursuant to 28 U.S.C. § 1442. PHEAA services student loans issued by the federal government under the William D. Ford

5

Direct Loan Program, 20 U.S.C. § 1087a et seq., and under the Federal Family Education Loan Program, 20 U.S.C. § 1071 et seq. PHEAA also administers the Public Service Loan Forgiveness Program. It is therefore a "federal officer" under 28 U.S.C. § 1442(a)(1), which provides for removal of any "civil action . . . against or directed to . . . any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ."[3]

**B. Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is

---

[3] PHEAA also bases this Court's subject matter jurisdiction under 28 U.S.C. § 1331 because it contends that Plaintiff's state law claims raise a federal issue. See Gunn v. Minton, 568 U.S. 251, 258 (2013) (explaining that a district court possesses federal jurisdiction over a state-law claim when a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."). In light of the independent grounds for federal question jurisdiction set forth above, the Court need not address this contention.

6

entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim."

7

Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

    A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

**C. Analysis**

In order to determine whether Plaintiff's state law claims are preempted under the HEA, the Court must assess in the first instance whether Plaintiff has pleaded cognizable state law claims. The Court finds that Plaintiff's state law claims are not properly pleaded, and the Court therefore does not need to determine at this stage whether they are preempted.[4]

The Complaint in this matter is sparsely and inartfully pled, lacking in both factual specificity and legal clarity. In her first count, Plaintiff claims that "PHEAA was late in telling Plaintiff that she was not making qualifying payments," "PHEAA knew of the statutorily created expectancy of Plaintiff and other similarly situated that the balance of the interest and principal due on their eligible federal loans would be cancelled after 120 PSLF-qualifying payments," and "absent PHEAA's lack of information regarding their statutory created

---

[4] "Article VI of the Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' Art. VI, cl. 2. Thus, since our decision in M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819), it has been settled that state law that conflicts with federal law is 'without effect.'" Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992). "Under the Supremacy Clause, federal law may supersede state law in several different ways," and over the years, the Supreme Court has recognized three types of preemption: express preemption, implied conflict preemption, and field preemption. Hillsborough County, Fla., v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985).

9

expectancy, the balance of the interest and principal due on her eligible federal loan would be cancelled" pursuant to the "College Cost of Reduction and Access Act" and the "Consolidate Appropriations Act of 2018." (Docket No. 1-1 at 7-8.)

As noted by PHEAA, Plaintiff's claim for "tortious interference with statutory created expectancy" does not exist under New Jersey law, and Plaintiff's opposition to PHEAA's motion does not argue otherwise. The most obvious way to construe this Count is a claim that PHEAA had a duty ("statutory created expectancy") to disclose to Plaintiff that her payment plan did not qualify for forgiveness and negligently (or intentionally) failed to disclose that information to Plaintiff ("Plaintiff is reasonably certain, absent PHEAA's lack of information . . . ."). That, however, is a generous reading, and Plaintiff's pro se status notwithstanding, the Court should not have to speculate about the nature of Plaintiff's claims.

As set forth below there are material differences between omissions cases, misrepresentation cases, and claims based on fraud. If Plaintiff wishes to assert a claim in Count One based on material omissions - that Plaintiff had a duty to disclose to her that she did not qualify for forgiveness at any time before that disclosure was made and failed to do so - she should state so clearly and plainly as the rules require. She should also plead whether such an omission was intentional or negligent and,

if both, to do so in separate counts.

Plaintiff's second ("Negligent Misrepresentation") and third ("NJCFA") counts fare a little better in that they are cognizable claims. But at the end of the day are also legally deficient. Each of these Counts center on affirmative statements. In both Plaintiff's negligent misrepresentation count and her count under the NJCFA, Plaintiff alleges that PHEAA intentionally and repeatedly gave inaccurate and misleading information about the repayment plans and her eligibility for the PSLF Program, which caused her to lose out on the forgiveness of the balance of the outstanding principal and interest on her Direct Loan as of February 11, 2018. So far so good.

As for the second claim, under New Jersey law, negligent misrepresentation is (1) an incorrect statement, (2) negligently made and (3) justifiably relied on, and (4) may be the basis for recovery of damages for economic loss sustained as a consequence of that reliance. Kaufman v. i-Stat Corp., 165 N.J. 94, 754 A.2d 1188, 1196 (2000). "Because negligent misrepresentation does not require scienter as an element, it is easier to prove than fraud." Id.

In contrast, a claim under NJCFA (the third claim) must meet the Federal Civil Procedure Rule 9(b) heightened pleading standard. Frederico v. Home Depot, 507 F.3d 188, 202-03 (3d

Cir. 2007). To satisfy this standard, the plaintiff must "plead the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means," so that the defendant is placed on notice of the precise misconduct with which it is charged. In re Riddell Concussion Reduction Litig., 77 F. Supp. 3d 422, 433 (D.N.J. 2015).

The NJCFA imposes liability on any person who uses: "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J.S.A. 56:8-2. Unlawful conduct falls into three general categories: affirmative acts, knowing omissions, and violation of regulations. Chaudhri v. Lumileds LLC, 2018 WL 6322623, at *6 (D.N.J. 2018) (citing N.J.S.A. 56:8-2, 56:8-4). An affirmative misrepresentation under the NJCFA is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Id. (citation omitted). "Unlike common law fraud, the NJCFA does not require proof of reliance." Id. (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 606 (3d Cir. 2012)). Additionally, "[w]hen the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant

12

intended to commit an unlawful act." Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).

A plaintiff asserting a NJCFA claim based on an omission must demonstrate that the defendant "'(1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment.'" Galo Coba v. Ford Motor Company, 932 F.3d 114, 124 (3d Cir. 2019) (quoting Judge v. Blackfin Yacht Corp., 815 A.2d 537, 541 (N.J. Super. Ct. App. Div. 2003)) (citing N.J.S.A. 56:8-2). "Where a plaintiff's theory is based on a knowing omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Cameron v. South Jersey Pubs, Inc., --- A.3d ---, 2019 WL 3022352, at *10 (N.J. Super. Ct. Appl Div. July 11, 2019) (citations omitted).

The crux of Plaintiff's claims against PHEAA is that when she transferred her loans to PHEAA in 2013, which was five years before she could have been eligible for the PSLF Program, "PHEAA did not provide proper information about what repayment plan Plaintiff should be in to qualify for the PSLF or TEPSLF[]". (Docket No. 1-1 at 6.) As for Count Two, Plaintiff supplements this general allegation of misrepresentation with a single paragraph (Docket No. 1-1, para. 41) which merely states in conclusory fashion that "PHEAA gave inaccurate and misleading information about repayment plans and eligibility for PSLF."

13

Id. This legal conclusion is unsupported by any facts alleging what was said, when, by what mode of communication, and how the statement or statements was or were misleading. These barebones allegations are insufficient to state a cognizable negligent misrepresentation claim.

Plaintiff has not alleged any facts regarding her communications with PHEAA about her eligibility for the PSLF Program.[5] To the extent her negligent misrepresentation claim and her claim under the NJCFA allege an affirmative misrepresentation, Plaintiff has not pleaded what misrepresentation PHEAA made to Plaintiff. If Plaintiff fails to assert sufficient facts to assert a negligence claim it follows that her NJCFA claim, which has a heightened pleading standard, must fail as well. Plaintiff's NJCFA claim fails to meet both the Rule 8 Twombly/Iqbal pleading standard and the Rule 9(b) heightened pleading standard required to state a viable NJCFA claim based on affirmative misrepresentations.

If Plaintiff intended to assert an "omission" claim under the NJCFA, as set forth above Plaintiff must plead facts to

---

[5] Plaintiff alleges in her complaint that she has a qualifying Direct Loan and is employed by a qualifying employer, which the Court accepts as true for the purposes of resolving PHEAA's motion to dismiss. Plaintiff attaches to her opposition brief various documents that show PHEAA/FedLoan Servicing determined that Plaintiff had met those two elements of the PSLF Program. (Docket No. 13-4.)

14

suggest that PHEAA knowingly and intentionally withheld material information from Plaintiff with an intent to deceive. The current allegations in the third claim – that PHEAA did not review her prior payment record (Docket No. 1-1 at 50) and an unspecific allegation of being "'misled" (Docket No. 1-1 at 51) fail to meet that standard.

The Court recognizes Plaintiff's frustration with the PSLF Program and TEPSLF, and notes that Plaintiff's alleged experience may be similar to others. Despite what may be valid concerns with the PSLF Program and TEPSLF,[6] Plaintiff's current

---

[6] See generally, Public Service Loan Forgiveness, Improving the Temporary Expanded Process Could Help Reduce Borrower Confusion, GAO-19-595, United States Government Accountability Office, Sept. 5, 2019, available at https://www.gao.gov/assets/710/701157.pdf. In its report, GAO noted:

> In the context of high denial rates in the PSLF program and evidence that some borrowers were being misinformed by loan servicers about which repayment plans would qualify for PSLF, Congress appropriated $4.6 million for Education to conduct outreach on PSLF and TEPSLF. The legislation called for this outreach to be targeted to, among others, borrowers who would qualify for PSLF loan forgiveness except that they have made some or all of their payments through plans that do not qualify.

Id. at 5-6. This lack of information has apparently led to high denial loan forgiveness rates as alleged in the Complaint (Docket No. 1-1, para. 9):

> From May 2018 through May 2019, about 40,000 borrowers submitted TEPSLF requests for loan forgiveness and Education has approved or denied about 54,000 separate TEPSLF requests. Education has approved 1 percent (661) and denied 99 percent (53,523) of these

15

complaint fails to meet basic pleading standards even accounting for Plaintiff's pro se status. Because Plaintiff's complaint fails to state any viable claims in its present form, it must be dismissed.

In her opposition to Defendant's motion, Plaintiff has requested leave to file an amended complaint, but she has not filed a corresponding motion pursuant to Federal Civil Procedure Rule 15(a)(2)[7] and Local Civil Rule 15.1.[8] The Court is not

---

> requests, according to the most recent data from the TEPSLF loan servicer.

Id. at 11.

[7] Fed. R. Civ. P. 15(a) provides in relevant part:

> (a) Amendments Before Trial.
>
>> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>>
>>> (A) 21 days after serving it, or
>>>
>>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>>
>> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

[8] L. Civ. R. 15.1(a) provides in relevant part:

> [A] party who seeks leave to amend a pleading shall do so by motion, which shall state whether such motion is opposed, and shall attach to the motion:

16

obligated to afford a plaintiff the opportunity to amend her complaint, either *sua sponte* or following the dismissal of the complaint pursuant to a motion to dismiss, if the plaintiff's claims do not assert civil rights violations, which are not present here. Fletcher Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

However, because of the possibility Plaintiff may amend her complaint to assert plausible claims,[9] the Court will afford

---

> (1) a copy of the proposed amended pleading; and
>
> (2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading which it proposes to amend, by bracketing or striking through materials to be deleted and underlining materials to be added.

[9] Several cases have mounted challenges to the PSLF Program and TEPSLF by asserting claims against the U.S. Department of Education and loan servicers, and those claims have proceeded past the motion to dismiss stage, or have been successful on the merits. See e.g., Pennsylvania v. Navient Corporation, 354 F. Supp. 3d 529, 562 (M.D. Pa. 2018) (denying the federal loan servicer's motion to dismiss the Commonwealth's consumer fraud claims that the loan servicer affirmatively steered borrowers facing long-term financial hardship into forbearance rather than exploring more appropriate income-driven options, which would qualify certain borrowers for the PSLF Program, finding that the Commonwealth's consumer fraud claims were not only about failing to disclose pertinent, material information to borrowers, but that they alleged steering borrowers into forbearance and misrepresenting the suitability of repayment options); American Bar Association v. United States Department of Education, 370 F. Supp. 3d 1, 15 (D.D.C. 2019) (suit against the U.S. Department of Education claiming Plaintiff relied on the representations of the Department, through its contracted administrator FedLoan Servicing, that their employees qualified under the PSLF Program when they accepted their employment, only to later be rejected

Plaintiff twenty days to file an amended complaint if she can do so consistent with the analysis set forth in this Opinion.

An appropriate Order will be entered.

Date: September 30, 2019            s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

---

for loan forgiveness under the PSLF Program because the Department, through FedLoan Servicing, determined that their employers were not actually qualifying under PSLF).